IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NORTH AVENUE CAPITAL, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. SAG-22-03240 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs/Counter-Defendants North Avenue Capital, LLC ("NAC") and Newtek Small Business Finance, LLC ("Newtek" and, together with NAC, the "Plaintiffs") filed this action to foreclose their interests in certain real and personal property ("the Collateral") owned by Defendants Moon Group, Inc. ("Moon Group"), Moon Landscaping, Inc. ("Landscaping"), Moon Nurseries, Inc. ("Nurseries"), Moon Site Management, Inc. ("Site Management"), Moon Wholesale, Inc., ("Wholesale") and Rickert Landscaping, Inc. ("Rickert" and collectively, the "Moon Entities"). Plaintiffs have also named as Defendants various parties—including Defendants/Counter-Plaintiffs Legalist DIP GP, LLC; Legalist DIP SPV II, LP; and Legalist DIP Fund I, LP (collectively, "Legalist")—that assert, or may assert, liens and interests in the Collateral.[1]

Two motions are pending. First, Plaintiffs have filed a motion seeking approval to engage an auctioneer to conduct a judicial sale of certain machinery and equipment ("the Equipment")

---

[1] The additional named defendants who may have interests in the Collateral are the United States of America (Internal Revenue Service); the United States Small Business Administration, the Comptroller of Maryland; J. Frank Schmidt & Sons, Co.; the Cecil County Department of Finance; Kore Capital Corporation; Padco Financial Services, Inc.; AILCO Equipment Finance Group, Inc.; Ross Capital Partners, LLC; John D. Pursell, Jr.; Angela M. Pursell; and John D. Pursell, III.

owned by the Moon Entities, with all liens on the Equipment to attach to the proceeds of the sale. ECF 52. Legalist opposed that motion, ECF 56, and Plaintiffs replied, ECF 58. Second, Plaintiffs have filed a motion to dismiss Legalist's counterclaims, which seek to set aside Plaintiffs' security interests in the Collateral as fraudulent conveyances. ECF 54. That motion is also fully briefed. ECF 54-1, 57, 59. No hearing is necessary to resolve these motions. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, both motions will be granted.

## I.  FACTUAL BACKGROUND

The Moon Entities operated a nursery and landscaping business in Chesapeake City, Maryland. ECF 1 ¶ 30. Plaintiffs are creditors who made loans to the Moon Entities in June, 2019. *See* ECF 1 ¶¶ 43, 62; ECF 44 ¶ 1. NAC extended a term loan to the Moon Entities in the principal amount of $10 million, ECF 1 ¶ 43, while Newtek extended a term loan in the principal amount of $5 million, *id*. ¶ 62. In exchange for those loans, the Moon Entities granted Plaintiffs security interests in the Collateral, which includes parcels of land in Cecil County, Maryland, along with the Moon Entities' inventory, parts, and the Equipment. *Id*. ¶¶ 43-82. ECF 44 ¶¶ 2, 3. Plaintiffs and the Moon Entities also entered into an intercreditor agreement, whereby Plaintiffs agreed to share a co-equal first lien position on the Collateral in the proportion of the outstanding balance on their respective loans. ECF 1 ¶¶ 83-86. As of the filing of the Complaint in this case, Plaintiffs allege that the Moon Entities owe them more than $15.9 million combined in connection with the loans described above, including principal, interest, late charges, and costs. ECF 1 ¶¶ 130, 135.

On August 12, 2021, the Moon Entities each filed voluntary petitions for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the District of Delaware. *Id*. ¶ 105; *see In re Moon Group, Inc., et al.*, No. 21-11140-JKS (Bankr. D. Del. 2021). Subsequent to the bankruptcy filings, the Moon Entities entered an agreement to obtain $8 million in debtor-in-possession financing from Legalist. ECF 1 ¶ 106. The bankruptcy court issued a final order

authorizing that debtor-in-possession financing agreement on December 15, 2022 (the "DIP Order"). ECF 01-16; *see also In re Moon Group, Inc.*, Dkt. 241. The DIP Order permitted the Moon Entities to grant Legalist various automatically perfected liens in the real and personal property of the Moon Entities, including junior liens on Moon Entities' property "subject to Permitted Senior liens," pursuant to 11 U.S.C. § 364(c)(3). ECF 01-16 ¶ 4(ii); *In re Moon Group*, No. 21-11140-JKS, Dkt. 241.

The Chapter 11 bankruptcy proceedings were eventually converted to Chapter 7 liquidation proceedings. *See In re Moon Group*, No. 21-11140-JKS, Dkt. 530, 607. On July 21, 2022, the bankruptcy court issued an order (the "Lift Stay Order") granting a joint consent motion by Plaintiffs and Legalist to (1) lift the automatic stay on the case with respect to the Collateral, and (2) abandon the Collateral so as to allow the parties to exercise their remedies pursuant to the loan agreements and liquidate the Collateral outside of bankruptcy. ECF 1-18 at 2-3; see also *In re Moon Group*, No. 21-11140-JKS, Dkt. 671.

Plaintiffs filed this action on December 15, 2022. ECF 1. In the Complaint, Plaintiffs assert that they have perfected, first-priority security interests in portions of the Collateral. ECF 1 ¶¶ 119-21. They attach various loan documents and financing statements which allegedly support their first-priority status. *See, e.g.*, ECF 1-06, 1-07, 1-11, 1-12, 1-13. The Complaint asks this Court to: (1) enter judgment for Plaintiffs against the Moon Entities for breach of the loan agreements (Counts I and II); (2) enter judgments of foreclosure and order the sale of the Collateral free and clear of all liens, with all such liens attaching to the net proceeds of the sales (Counts III-V); (3) adjudicate the validity and priority of the parties' liens (Counts VI, VII); and (4) distribute the proceeds of the sales referenced above to the lienholder parties in their respective orders of priority (Count VIII). *Id.* ¶¶ 125-176. Defendants Kore Capital Corporation, the United States of America, and Legalist all filed answers. ECF 29, 44, 50. Legalist also asserted three counterclaims pursuant

to provisions of the Maryland Uniform Fraudulent Conveyance Act (MUFCA), Md. Code Ann., Comm. Law §§ 15-201, *et seq.*, contending Plaintiffs did not provide fair consideration to the Moon Entities in exchange for their security interests in the Collateral. ECF 44, pp. 21-23, ¶¶ 1-18.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Furthermore, claims that sound in fraud implicate the heightened pleading standard of Federal Rule of Civil Procedure 9(b). That rule states: "In alleging fraud or mistake, a party must

state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Under Rule 9(b), a claim that sounds in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quotation omitted). In other words, Rule 9(b) requires the plaintiff to plead "the who, what, when, where, and how of the alleged fraud" before the parties can proceed to discovery. *United States ex rel. Wilson v. Kellogg Brown & Root*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation omitted). However, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quotation omitted).

Finally, federal courts reviewing a 12(b)(6) motion may take judicial notice of matters of public record and may consider documents incorporated into a complaint by reference without converting the motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Accordingly, this Court may consider various documents attached to Plaintiffs' complaint that are related to their loans and the underlying bankruptcy proceedings. *See*

ECF 1-02 to ECF 1-18. The Court also takes judicial notice of the records from the underlying bankruptcy proceeding, which are matters of public record.

### III. ANALYSIS

#### A. Motion to Dismiss Counterclaims

This Court will begin by analyzing Plaintiffs' motion to dismiss. Legalist's three counterclaims seek to set aside the Moon Entities' transfers to Plaintiffs of security interests in the Collateral, pursuant to three provisions of the MUFCA. *See* Md. Code Ann., Comm. Law §§ 15-204, 15-205, 15-206; ECF 44 at p. 21-23. Those provisions provide that a conveyance may be set aside if it was made without fair consideration and either: (1) "was committed by a person or entity engaged or about to be engaged in a business or transaction for which the property remaining in [their] hands after the conveyance is an unreasonably small capital" (§ 15-205, Count I); (2) "was committed by a person or entity who intends to or believes that [they] will incur debts beyond [their] ability to pay when [they] undertake[] the conveyance" (§ 15-206, Count II); or (3) "was committed by a person or entity who is or will be rendered insolvent by the conveyance" (§ 15-204, Count III). *Fenzel v. Grp. 2 Software, LLC*, Civ. No. DKC 13-0379, 2016 WL 865363, at *18 (D. Md. Mar. 7, 2016).

As explained below, this Court concludes that Legalist's counterclaims are subject to dismissal on some, but not all, of the grounds cited by Plaintiffs. Accordingly, the counterclaims will be dismissed, but Legalist will be granted leave to amend.

##### i. Failure to State a Claim

###### a. Twombly/Iqbal

Plaintiffs first contend that Legalist has failed to plead sufficient facts to support its counterclaims as is required by Rule 8(a)(2). *See, e.g.*, *Twombly*, 550 U.S. at 570 (stating that a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face"). This

Court agrees with Plaintiffs.[2] Though their required elements vary slightly, the gravamen of each of Legalist's three MUFCA claims is that one or more of Moon Entities failed to receive fair consideration in exchange for granting Plaintiffs security interests in the Collateral. But the "Factual Background" offered by Legalist in support of its counterclaims is threadbare, consisting of a mere five paragraphs. ECF 44 at p. 21. The first three paragraphs generally allege that Plaintiffs made loans to the Moon Entities in exchange for security interests in real and personal property. *Id*. ¶¶ 1-3. The next paragraph then asserts that "upon information and belief, one or more of the Moon Entities did not receive fair consideration for the granting of said security interests." *Id*. ¶ 4. The remainder of Legalist's counterclaims consist of legal conclusions or bare recitations of the elements of each cause of action.[3] Such formulaic pleadings, devoid of any specific facts, are insufficient to state a claim for relief. *See Twombly*, 550 U.S. at 555 (complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

---

[2] Legalist's counterclaims therefore also cannot satisfy the more rigorous pleading requirement of Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake."

[3] For example, Legalist's Count I asserts a claim under § 15-205, which states:

> Every conveyance made without fair consideration when the person who makes it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and other persons who become creditors during the continuance of the business or transaction without regard to his actual intent.

In support of this claim, Legalist's only allegations, in addition to the "Factual Background" restated above, are: (1) that "[a]t the time that the Moon Entities made the transfers, the Moon Entities were a person doing business in Maryland"; (2) "[t]he Transfers were made without fair consideration to one or more of the Moon Entities"; and (3) "the Transfers left unreasonably small capital remaining in the hands of one or more of the Moon Entities." ECF 44 at p. 22 ¶¶ 6-9. Thus, Legalist's only allegations consist of restatements of the statutory elements. Legalist's Counts II and III rely on nearly identical, unsupported legal conclusions. *Id*. at p. 22-23 ¶¶ 10-18.

Legalist relies primarily on this Court's opinion in *Santander Bank, NA v. Gaver*, Civ. No. RDB-17-00374. 2019 WL 1077386 (D. Md. March 7, 2019), to argue that it has adequately pled its MUFCA claims. Specifically, *Santander Bank* stated that "[a] plaintiff sufficiently pleads a fraudulent conveyance claim under the MUFCA by describing the transactions which allegedly constitute a fraudulent conveyance, identifying the participants in those transactions, and generally alleging that the transfers were made without fair consideration." 2019 WL 1077386, at *5 (citing *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002)). But in *Santander Bank*, the Court expressly noted that the plaintiff's complaint "state[d] with particularity the circumstances giving rise to the alleged fraud," including "the dates on which the alleged transfers occurred . . . and the parties to the transfers" *Id*. By contrast, Legalist has failed to allege which transfers of security interests were fraudulent, how much money and collateral was involved in those transfers, or which of the six Moon Entities supposedly made the offending transfers (including which of the Moon Entities were left with unreasonably small capital and/or were rendered insolvent as a result of the transfer). Rather, Legalist's only factual assertion is that "*one or more* of the Moon Entities did not receive fair consideration" in exchange for the granting of the security interests. ECF 44 at p. 21 ¶ 4. Such generalized and speculative pleadings are insufficient to provide Plaintiffs with adequate notice of the claims against them. Accordingly, all of Legalist's counterclaims must be dismissed pursuant to *Twombly* and *Iqbal*.

      b. <u>Debtor-creditor relationship at the time of conveyance (§ 15-204)</u>

Plaintiffs seek dismissal of Legalist's counterclaim under § 15-204 on the basis that Legalist has not pled—and cannot plead—a debtor-creditor relationship with the Moon Entities at the time the alleged fraudulent transfer occurred. Section 15-204 states:

> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual

intent, if the conveyance is made or the obligation is incurred without a fair consideration.

This Court has held that a claimant must allege a debtor-creditor relationship at the time the alleged conveyances occurred in order to state a claim under § 15-204. *See U.S. Equal Emp. Opportunity Comm'n v. Phase 2 Invs. Inc.*, 333 F. Supp. 3d 505, 520 (D. Md. 2018) (dismissing a count brought under § 15-204, where the claimant "[did] not allege it was in a debtor-creditor relationship with [the defendant], *i.e.* that [the defendant] owed [claimant] any money, when [the defendant] effected the alleged conveyances"); *see also In re Int'l Loan Network, Inc.*, 160 B.R. 1, 18 (Bankr. D.D.C. 1993) ("Under Maryland law . . . any creditor *in existence at the time of the challenged conveyance* may invoke the [MUFCA] even though their claim has not yet matured." (emphasis added)); *Meese v. Meese*, 212 Md. App. 359, 69 A.3d 53, 58 (Md. Ct. Spec. App. 2013) ("A conveyance is fraudulent as to creditors if it is made by a person who is insolvent or who will be rendered insolvent by it." (internal quotation marks and citations omitted)). Here, Legalist has not alleged it was a creditor of the Moon Entities at the time the alleged fraudulent conveyances occurred. Indeed, it seemingly cannot allege as much, given that the challenged transactions between Plaintiffs and the Moon Entities occurred in June, 2019—more than two years before the Moon Entities filed for bankruptcy and obtained debtor-in-possession financing from Legalist. *See* ECF 1 ¶¶ 43, 62, 105-110.

Legalist nonetheless argues that the language of § 15-204 does not exclude future creditors from asserting a claim under that provision. Specifically, the provision states a conveyance is fraudulent "as to creditors" if it is incurred by a person who is or will be rendered insolvent by the transactions, and where the conveyance is made without fair consideration. Md. Code Ann., Comm. Law § 15-204. But statutes must be construed "as a whole so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Moore v. State*,

388 Md. 446, 453 (2005). Notably, § 15-205, which applies to instances when a conveyance leaves a party with "an unreasonably small capital," states that such a transaction is fraudulent "as to creditors *and other persons who become creditors during the continuance of the business or transaction*." § 15-205 (emphasis added). Similarly, § 15-206, which applies to conveyances made by parties who believe they will incur debts beyond their ability to pay as they mature, renders such conveyances fraudulent "as to both present *and future creditors*." § 15-206 (emphasis added). If the phrase "as to creditors" in § 15-204 encompassed future creditors, then portions of §§ 15-205 and 15-206 would be surplusage. Thus, reading the statutory scheme "as a whole," *Moore*, 388 Md. at 453, it is clear that "as to creditors" in § 15-204 refers only to creditors in existence at the time of the challenged conveyance.[4] Because Legalist has not alleged it was a creditor of the Moon Entities at the time Plaintiffs were granted security interests in the Collateral, Count III must be dismissed.

c. <u>Debtor-Creditor Relationship with Plaintiffs (§§ 15-205 and 15-206)</u>

This Court also agrees with Plaintiffs that Legalist's counterclaims under §§ 15-205 and 15-206 must be dismissed because Legalist has not established a debtor-creditor relationship with Plaintiffs, as the transferee of the security interests in the challenged transactions. In *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783 (Md. Ct. Spec. App. 1999), the then-Court of Special Appeals of Maryland considered the viability of claims under sections 15-205 and 15-206 of the MUFCA by an issuer of home warranties against a

---

[4] This reading of § 15-204 also comports with common sense. As explained above, that provision applies to situations in which a debtor is either insolvent or will be rendered insolvent by a conveyance. In contrast, §§ 15-205 and 15-206 apply to situations where the debtor is left with some capital, but not enough to repay *future* debts. Where the debtor is already insolvent due to a prior conveyance, the responsibility logically lies with the future creditor to conduct due diligence prior to extending credit. Here, Legalist voluntarily loaned money to bankrupt debtors and was presumably fully aware of the many liens on the Moon Entities' real and personal property at the time of its loan.

11

condominium developer's shareholders for fraudulent conveyance. The warrantor asserted that the developer, which was alleged to be liable for construction defects in the condominium, had fraudulently transferred funds to its shareholders without fair consideration. *Id*. at 792. In affirming the trial court's grant of summary judgment to the shareholders, the then-Court of Special Appeals explained that the warrantor and shareholders "do not have a creditor-debtor relationship." *Id*. Thus, while the court noted that the warrantor may have a claim against the developer that transferred the assets (and of which the warrantor alleged it was a creditor), the warrantor did not have a claim against the shareholders "because the [shareholders] never could have anticipated that [the warrantor] would be a future creditor of them personally." *Id*. Likewise here, the proper target of Legalist's claims under §§ 15-205 and 15-206 are the Moon Entities, which transferred the relevant security interests Legalist seeks to avoid, and to which Legalist is a creditor. Pursuant to *Residential Warranty*, Legalist's Counts I and II must be dismissed.

      ii. *Standing*

Plaintiffs next assert that Legalist has failed to plead that it has standing to bring its fraudulent conveyance claims. "If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) (citing *Steyr–Daimler–Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988)). The parties do not dispute that the right to set aside a security interest in the Collateral under a fraudulent conveyance theory became property of the Moon Entities' bankruptcy estates. *See* 11 U.S.C. §§ 544, 548 (empowering "the trustee" to avoid fraudulent conveyances). The parties also do not dispute that the Collateral that is the subject of this action was abandoned during the underlying bankruptcy proceedings, pursuant to 11 U.S.C. § 554. *See* Lift Stay Order; *In re Moon Group*, No. 21-11140-JKS, Dkt. 607.

The parties do dispute, however, whether the Chapter 7 Trustee ("the Trustee") effectively abandoned the right to bring fraudulent conveyance actions regarding the Moon Entities' transfer of security interests to Plaintiffs. As Plaintiffs point out, while the bankruptcy court's Lift Stay Order effectuated the abandonment of the Moon Entities' real and personal property, it expressly exempted from abandonment "avoidance actions." ECF 1-18 ¶¶ 3, 5 ("For the avoidance of doubt, the Lenders' Collateral [being abandoned] does not include avoidance actions."). Plaintiffs thus argue that, unless and until the Trustee abandons the right to bring avoidance actions, including fraudulent conveyance claims regarding the security interests transferred to Plaintiffs, Legalist lacks standing to assert its counterclaims.

This Court disagrees with Plaintiffs. While the Trustee and the bankruptcy court may not have expressly abandoned the fraudulent conveyance actions that Legalist now brings, it is not clear how the Trustee could possibly establish standing in bankruptcy court to assert such claims. Once abandoned, property that was formerly part of a bankruptcy estate reverts to the debtor "as if no bankruptcy had been filed." *In re Lyn*, 483 B.R. 440, 451 (Bankr. D. Del. 2012). This removal of property from the bankruptcy estate "divest[s] the trustee of control over that property and divest[s] the Court of jurisdiction over matters concerning the abandoned property." *Id*. Even if the Trustee were to prevail in bankruptcy court in a fraudulent conveyance action with respect to Plaintiffs' security interests, such an outcome would provide no redress or benefit to the bankruptcy estate. The Collateral has already been abandoned from the estate, and therefore a claim to set aside security interests in the Collateral would only benefit third-party creditors, like Legalist, whose lien priorities in the Collateral would improve. Accordingly, at least one bankruptcy court has held that a Chapter 7 trustee lacked standing to bring an action to avoid a pre-petition grant of a security interest, where the property at issue had already been abandoned by the estate. *See In re Buerge*, 2013 WL 4409698, at \*5-7 (Bankr. D. Kan. Aug. 13, 2013)

(dismissing the trustee's claim and explaining that "a proceeding to show that a lien never attached to property . . . is of no value to the estate when the property potentially tied to the lien is not property of the estate"). Moreover, courts have also concluded that the jurisdiction of the bankruptcy court over priority disputes like the instant case "lapses when property leaves the estate." *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987); *see also In re Wilton Armetale, Inc.*, 618 B.R. 424, 436 (Bankr. E.D. Pa. 2020) ("'Usually, abandonment of property will end the court's jurisdiction to determine disputes concerning that property, unless the result of the dispute could have some effect on the bankruptcy case . . . .'" (quoting Collier on Bankruptcy, at ¶ 554.02)). Indeed, the bankruptcy court in the dispute underlying this case concluded it lacked subject matter jurisdiction to adjudicate the lien priorities of the parties with respect to the Collateral because "[t]he Debtors' estates would derive no benefit from such determination." *In re Moon Group*, No. 21-11140-JKS, Dkt. 706 ¶¶ 29-38.

Under the circumstances, this Court concludes that Legalist has standing to bring a fraudulent conveyance claim regarding the pre-petition transfer of security interests to Plaintiffs. This Court declines to interpret the Lift Stay Order as exempting from abandonment a claim that the Trustee cannot bring, and which the bankruptcy court seemingly lacks subject matter jurisdiction over. Additionally, Plaintiffs have made no argument that Legalist otherwise fails to satisfy the constitutional standing requirements necessary to bring their MUFCA counterclaims in this Court. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that a plaintiff in federal court "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (quotations omitted)). Indeed, it is evident that a successful fraudulent conveyance action would provide redress to Legalist by improving its lien priority with respect to the Collateral. Accordingly, while the counterclaims will be dismissed as insufficiently pled, a lack of standing

14

does not preclude Legalist from attempting to amend those counterclaims, should it choose to do so.

### iii. Limitations

Similarly, this Court concludes that Legalist's claims are not subject to dismissal pursuant to Maryland's three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. "Courts adjudicating a Rule 12(b)(6) motion generally do not resolve contests surrounding the applicability of defenses like statutes of limitations." *Layani v. Ouazana*, Civ. No. SAG-20-420, 2022 WL 11949038, at *4 (D. Md. Oct. 20, 2022) (quotation omitted) (alteration adopted). However, a defense may be reached "if all facts necessary to the affirmative defense 'clearly appear on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (alterations adopted)). As Plaintiffs note, Legalist's counterclaims state that Plaintiffs loaned money to the Moon Entities in exchange for security interests in the Collateral in June, 2019—more than three years before this suit was initiated. ECF 44 at p. 21 ¶¶ 1-3. But Maryland applies the "injury discovery rule," which dictates that the limitations period begins to run from "the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Windesheim v. Larocca*, 116 A.3d 954, 962 (Md. 2015) (quotation omitted). And it is not clear from the Complaint and the counterclaims that Legalist, which did not loan money to the Moon Entities until after the bankruptcy petitions were filed in August, 2021, should have discovered in 2019 that the conveyances were allegedly fraudulent. Accordingly, the counterclaims are not subject to dismissal on limitations grounds, though they are dismissed for the reasons described above.

### B. Motion to Approve Judicial Sale of the Equipment

Plaintiffs have also filed a motion seeking this Court's approval to engage an auctioneer and conduct a judicial sale of the Equipment, free and clear of liens, with the sale proceeds to be placed in escrow pending this Court's final determination of the parties' lien priorities. ECF 52; *see also Mellen v. Moline Malleable Iron Works*, 131 U.S. 352, 357 (1889) (stating that "the removal of alleged liens or incumbrances upon property, the closing up of the affairs of insolvent corporations, and the administration of and distribution of trust funds are subjects over which courts of equity have general jurisdiction"). The Equipment consists of several hundreds of items—ranging from heavy machinery, to leaf blowers and mowers, to snow removal equipment—owned by three of the Moon Entities: Nurseries, Landscaping, and Site Management. *See* ECF 52-1 (Proposed Auction Contract); 52-2 ¶ 3 (Affidavit of P. Mangelli); ECF 58-1 ¶ 6 (Decl. of J. Pursell, Jr.). According to Plaintiffs, some of these items were delivered to Ritchie Bros. Auctioneers (America) Inc. ("Ritchie Bros.") in August, 2022, following the Lift Stay Order, for inclusion in one of Ritchie Bros.'s periodic, multi-day equipment auctions. ECF 52 ¶ 12. However, those sales were cancelled after Legalist objected. *Id*. Following the cancellation, Plaintiff brought the instant foreclosure action, which asks this Court to, among other things, order the sale of the Collateral, including the Equipment, with all liens attaching to the proceeds of the sales according to their validity and priority, as to be determined by this Court. *See* ECF 1, Counts III-VIII. The instant motion pertains only to the Equipment,[5] and contends that the sale of the Equipment at an upcoming Ritchie Bros. auction, scheduled for May 14-19, 2023 in Maryland, will best maximize

---

[5] Plaintiffs' motion does not seek the immediate sale of other items of the Collateral, such as the real property owned by Nurseries. Additionally, Plaintiffs clarify that the Equipment does not include any items subject to certificates of title, which it acknowledges Legalist may have a superior interest in. ECF 52 at 5 n.2; ECF 58 at 4. This Court notes that Plaintiffs' proposed Auction Contract, ECF 52-1, includes a list of all Equipment to be sold at the Ritchie Bros. auction, and Legalist has not identified any items on that list that may be subject to certificates of title.

the value of the Equipment for all lienholders. ECF 52 ¶ 13; ECF 52-3 ¶¶ 11-13, 20-21 (Decl. of E. Dwyer).

Pursuant to 28 U.S.C. § 2004, "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with [28 U.S.C. § 2001], unless the court orders otherwise." Section 2001 pertains to court-ordered sales of real property. Under § 2001(a), sales of real property by public auction must occur either at the courthouse or upon the real property to be sold. It is evident that an auction either at the courthouse or at the Moon Entities' place of business is not feasible in this instance, as the Equipment includes hundreds of items, some of which are quite large. Additionally, § 2001(b) provides for private sales of real property, subject to several requirements. *See United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021); *SEC v. Private Equity Mgmt. Grp., LLC*, Civ. No. 09–2901 PSG (Ex), 2009 WL 10676006, at *2–3 (C.D. Cal. Nov. 20, 2009). For example, if the sale occurs privately, § 2001(b) requires three appraisals, public notice of the terms of sale, and an opportunity for a 10-percent upset bid. *See* § 2001(b); *Scherer*, 532 F. Supp. 3d. at 489. Not surprisingly, then, the parties do not appear to dispute that the procedures for a court-ordered sale of real property pursuant to § 2001 are ill-suited to the disposition of the vast collection of personal property comprising the Equipment. This Court therefore may exercise its discretion to order the sale of the Equipment pursuant to procedures different than those specified by § 2001. *See* § 2004.

Legalist contends, however, that a judicial sale of the Equipment is inappropriate at this time, regardless of the terms. It argues that no sale should occur until this Court determines the parties' respective rights in the Collateral, at which point the party with the highest lien priority in the Equipment can choose how to dispose of it. Notably, no other defendant has opposed Plaintiffs'

motion seeking to sell the equipment at the upcoming Ritchie Bros. auction.[6] And there is no indication that any party has use for the Equipment itself. Rather, all parties appear interested only in the funds derived from sale, which would be held in escrow pending this Court's adjudication of lien priorities.

Legalist nonetheless portrays the proposed auction as a "fire sale" that will fail to maximize the Equipment's value. ECF 56 at 4. But Legalist has not proposed an alternative method of disposing of the Equipment. And given the nature and volume of the Equipment, it is not clear what other means, besides a large auction, could possibly facilitate its efficient and effective sale. Indeed, Ritchie Bros. has represented that it "has extensive experience with the auction and sale of machinery and equipment such as the [Equipment]," and further that its large, live auctions "attract[] onsite and online buyers from around the world." ECF 52-2 at ¶ 3, 4 (Affidavit of P. Mangelli). Additionally, Plaintiffs state that much of the Equipment must be stored outside due to its size and volume, leaving it susceptible to rust and other deterioration due to the elements. ECF 58-1 ¶ 10 (Decl. of J. Pursell, Jr.). This Court therefore agrees that there is a strong interest in selling the Equipment as soon as possible to avoid its continued depreciation.

Finally, Legalist attempts to cast doubt on the priority of Plaintiffs' liens, arguing that a sale is inappropriate until the parties' lien priorities are finally adjudicated. But Legalist's assertions regarding the inadequacy of Plaintiffs' interests fail to withstand scrutiny. Specifically, Legalist contends that (1) several Moon Entities are organized in Delaware and Pennsylvania, and (2) NAC has failed to offer proof that it filed the appropriate financing statements in those states, as is required to perfect its security interests and establish the priority of its lien. Two of the three Moon Entities who own the Equipment, Landscaping and Site Management, are in fact organized

---

[6] This includes the Internal Revenue Service, which purports to have tax liens against the Moon Entities in excess of $1.2 million. ECF 1 ¶ 88; ECF 50 ¶ 88.

in Pennsylvania. ECF 1 ¶¶ 4, 6; ECF 58-1 ¶ 5 (Decl. of J. Pursell, Jr.). But while Plaintiffs do not allege that NAC filed financing statements in Pennsylvania, *see* ECF 1 ¶¶ 120-21, they have offered proof that Newtek did. Copies of Newtek's financing statements in Pennsylvania were attached to the Complaint. *See* ECF 1-13. Additionally, Nurseries, the third Moon Entity which owns portions of the Equipment, is organized in Maryland, *see* ECF 1 ¶ 5, and both Plaintiffs have attached copies of their Maryland financing statements to the Complaint, ECF 1-7, ECF 1-12.[7] Thus, Legalist has not countered Plaintiffs' showing that at least one (and in some cases both) of Plaintiffs possess a perfected, first-priority security interest in all of the Equipment. *See* ECF 1 ¶¶ 119-21 (alleging that at least one of Plaintiffs was the first to file financing statements with respect to Collateral belonging to Nurseries, Landscaping, and Site Management).[8] Of course, Legalist is free to reassert its arguments regarding the deficiency of Plaintiffs' security interests in the Equipment during subsequent stages of this litigation. Should Legalist (or any other defendant) establish that its liens on the Equipment should take priority, it will be entitled to a corresponding share of the sale proceeds. For now, however, Legalist has failed to offer good cause to deny Plaintiffs' motion, particularly given concerns over the Equipment's depreciating value. Furthermore, this Court is satisfied with the terms and procedures of the sale proposed by Plaintiffs, including the proposed Auction Contract, ECF 52-1, the form of the Notice of Auction, ECF 52-5, and other procedures providing for the care, transport, and temporary storage of the Equipment at reasonable costs. *See generally* ECF 52.

---

[7] The remaining Moon Entities, Moon Group, Wholesale, and Rickert, are incorporated in Delaware, Pennsylvania, and Pennsylvania, respectively. ECF 1 ¶¶ 3, 7, 8; ECF 58-1 ¶¶ 7,8 (Decl. of J. Pursell, Jr.). The Moon Entities' president stated in a declaration that none of these three entities own any of the Equipment subject to this motion. *Id.* ¶ 9.

[8] While Legalist further points to its fraudulent conveyance counterclaims as a reason not to order a sale of the Equipment, *see* ECF 56 at 5, this Court has already dismissed those counterclaims for the reasons stated above.

In summary, for the reasons stated above, this Court concludes that a sale of the Equipment at the proposed Ritchie Bros. auction in May (or at the next feasible auction date) will best maximize the value of the Equipment to the benefit of all lienholders. Accordingly, this Court will grant Plaintiffs' motion and approve a judicial sale of the Equipment pursuant to the procedures set forth in the accompanying Order Approving Judicial Sale. *See* 28 U.S.C. §§ 2001, 2004. The sale of the Equipment will take place free and clear of all liens, with all liens attaching to the sale proceeds with the same validity and priority as before the sale. Those sale proceeds will remain in escrow, subject to this Court's final determination of the parties' lien priorities in accordance with applicable law.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss, ECF 54, is GRANTED. However, Legalist will be granted leave to amend its Counterclaims, should it choose to do so. The Amended Counterclaims, if any, shall be filed no later than twenty-one (21) days after the filing of this opinion. A separate Order follows regarding the dismissal of the counterclaims and the period of amendment.

Additionally, Plaintiffs' motion to appoint an auctioneer and conduct a judicial sale of the Equipment, ECF 52, is GRANTED. The procedures governing that sale are set forth in the additional Order Approving Judicial Sale that follows this Memorandum Opinion.

Dated: April 10, 2023                                              /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge